UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DONALD W. MANN, JR.,

                       Plaintiff,

                v.                           DECISION AND ORDER
                                                              06-CV-6419 CJS
MICHAEL J. ASTRUE,[1] COMMISSIONER
OF SOCIAL SECURITY

                       Defendant.

**INTRODUCTION**

Plaintiff brings this action pursuant to the Social Security Act, (codified in relevant parts at 42 U.S.C. § 401 et. seq. and 42 U.S.C. § 1381 et. seq.) claiming that the Commissioner of Social Security improperly denied his application for disability insurance benefits. Specifically, plaintiff alleges that the decision of an Administrative Law Judge ("ALJ") was erroneous and not supported by the substantial evidence contained in the record, or was contrary to law.

The Commissioner moves for judgment on the pleadings on grounds that the ALJ's decision was correct, was supported by substantial evidence, and was made in accordance with applicable law. Plaintiff opposes defendant's motion and has cross-moved for judgment on the pleadings. For the reasons stated below, the Commissioner's motion for judgment on the pleadings is denied, plaintiff's motion is granted, the Commissioner's decision is reversed, and the case is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g).

---

[1] Mr. Astrue was sworn in as Commissioner on February 12, 2007. *See* "Michael J. Astrue Sworn in as Commissioner of Social Security" (Social Security Press Release, Feb. 12, 2007), *available at* http://www.ssa.gov/pressoffice/pr/astrue-pr.htm (last checked Feb. 26, 2007). He is hereby substituted pursuant to Federal Rule of Civil Procedure 25(d)(1) for Ms. Barnhart.

**BACKGROUND**

On January 23, 2002, plaintiff, at the time 41 years of age, applied for Social Security disability benefits claiming that he has been unable to work as of January 17, 2000 because of a cervical spine disorder.[2] Plaintiff's application was initially denied and he requested a hearing. The hearing was held on June 1, 2004 and February 24, 2005, in Rochester, New York, before ALJ Marilyn D. Zahm, who issued a decision on April 11, 2005, finding that plaintiff was not disabled. (Record, at 15-27.) The Appeals Council denied plaintiff's request for review on July 19, 2006, making the ALJ's decision the final decision of the Commissioner. Plaintiff filed this action for review on August 18, 2006.

**DISCUSSION**

I.   Jurisdiction and Scope of Review

This Court has jurisdiction to hear claims based on the denial of Social Security benefits. 42 U.S.C. § 405(g). Additionally, the statute directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v NLRB*, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Lynn v. Schweiker*, 565 F. Supp 265, 267 (S.D. Tex. 1983)

---

[2] Specifically, Mann wrote that he had "osteo arthritis – C5 dysection – Difficulty in walking & lifting." (Record, at 98.)

(citation omitted). Defendant asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that "the plaintiff can prove no set of facts in support of [his] claim which would entitle [his] to relief," judgment on the pleadings may be appropriate. *See, Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Because the Court determines that the findings of the Commissioner are not supported by substantial evidence contained in the record, the Commissioner's motion for judgment on the pleadings is denied, and plaintiff's cross-motion for judgment on the pleadings is granted.

      II.    <u>The Commissioner's decision to deny Plaintiff's Application for Benefits is not supported by the substantial evidence in the record.</u>

The ALJ determined, based on the evidence before her, that although plaintiff's cervical spine disorder was a "severe" impairment, it did not rise to a level of severity that would warrant a finding of disability. Plaintiff objects to the ALJ's findings on grounds that the ALJ improperly disregarded the opinion of Steven D. Lasser, M.D., plaintiff's treating physician since at least November 14, 2000. Plaintiff also objects that the ALJ improperly assessed plaintiff's residual functional capacity ("RFC"), and further that the ALJ failed to properly assess plaintiff's credibility. For the reasons set forth below, the Court finds that the ALJ erred by discounting the opinion of Dr. Lasser.

The Record shows that plaintiff was first seen by Dr. Lasser, an orthopedic surgeon, on March 5, 2000. Dr. Lasser noted that plaintiff had been complaining of symptoms since the previous June and had been unable to work since January 2000. Dr. Lasser's examination revealed that plaintiff had limited range of motion in his neck, especially with

flexion. (Record, at 230-31.) Further, Dr. Lasser found that plaintiff had: decreased extremity strength and extreme hyper-reflexia in both biceps, triceps and brachialradialis; multiple beats of clonus in both ankles; and a staggering wide-spaced gait which was partially spastic. Dr. Lasser determined that plaintiff showed "significant evidence of cervical spine cord damage and cord compression from a C3-4 disc spur complex." Dr. Lasser put plaintiff on medication in an effort to decrease the inflammation around the cervical spinal cord in an effort to postpone surgery. (Record, at 230.) Dr. Lasser wrote that the amount of improvement was difficult to gauge and that there would be "some permanency." (*Id.*)

Plaintiff saw Dr. Lasser again on March 7, 2000, after being on the medication for two days. Dr. Lasser still felt that plaintiff had significant spondylitic myelopathy which had been progressive. Dr. Lasser concluded that plaintiff's condition would worsen and the chance of recovery would be increasingly remote if surgery did not take place. (Record, at 230.)

On March 27, 2000, Dr. Lasser operated on plaintiff, performing a C3-4 anterior cervical discectomy and fusion. (Record, at 201-02.) Dr. Lasser's diagnosis was degenerative disc disease with herniation at C3-4, cervical spondylitic myelopathy with spinal cord damage and myelomalacia at C3-4. Dr. Lasser disclosed to plaintiff, prior to surgery, that "the myelomalacia and damage to the cord may be permanent and that maximal recovery could take several years." (Record, at 201.)

Plaintiff was seen by Dr. Lasser on several occasions following the surgery. He returned to Dr. Lasser again on November 27, 2002, complaining of intermittent pain with some numbness and tingling and burning into his hands. Plaintiff reported that he was taking his medications as needed. Dr. Lasser's impression was cervical disc disease, status post surgery, and Dr. Lasser concluded that plaintiff had a permanent marked partial disability. (Record, at 327.) Dr. Lasser completed a Cervical Spine Residual Functional

Capacity Questionnaire on October 28, 2003. (Record, at 244-46.) In his responses to the questions on the form, Dr. Lasser indicated that plaintiff had a poor prognosis; that plaintiff suffered from chronic pain/parathesia; that plaintiff had a significant limitation of motion; that the impairments had lasted, or could be expected to last at least twelve months; that plaintiff's limitations were reasonably consistent with the symptoms and functional limitations described in the evaluation form; that plaintiff's pain or other symptoms were severe enough in a typical work day to interfere with the attention and concentration necessary to perform even simple work tasks from 6% to 33% of an 8-hour working day; that plaintiff needed a job where he could shift from sitting, standing and walking at will; that plaintiff would need to take hourly unscheduled breaks from work during an 8-hour day for 10 minutes each to rest his head on a high back chair; that plaintiff could never look down, and only occasionally look up, or hold his head in a static position; that plaintiff's impairments were likely to produce "good days" and "bad days"; that plaintiff would likely be absent from work as a result of his impairments or treatment more than four days per month; and, that, when plaintiff's symptoms required medication, this would sedate him and would affect his work. (Record, at 244-46.) In response to follow-up questions from the ALJ, Dr. Lasser noted that plaintiff had reached maximum medical improvement and that no further surgery or pain medication was medically indicated. (Record, at 23, 312-16.) The ALJ requested clarification from Dr. Lasser, which he eventually provided in part. (Record, at 312-16.) After reviewing Dr. Lasser's office notes, his reports, and plaintiff's testimony with regard to his use of medication, the ALJ determined that,

> Dr. Lasser's residual functional capacity assessments of November 2000 and October 2003 are given little weight, as they are not based on objective evidence but on the claimant's subjective complaints. It is also noteworthy that Dr. Lasser expressed no need for the claimant to rest his head on a high back chair in November 2000, eight months after his surgery, and yet stated this need in October 2003, two and a half years after surgery. This is true as well for his October 2003 restrictions on the claimant's neck position.
>
> Furthermore, Dr. Lasser did not send the claimant out for any tests or prescribe any treatment for him between November 2000 and October 2003.

> In fact, no treatment, outside of medication, was ever prescribed after surgery. The treatment notes and the prescription printout show that the claimant did not use much medication after June 21, 2000, up until the time of the first hearing.

(Record, at 24.)

In her decision, the ALJ failed to comply with the Commissioner's requirements to, "always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527. The Court finds that the ALJ failed to apply the proper standard in coming to the conclusion that Dr. Lasser's opinion deserved little weight. As the Second Circuit made clear in *Rosa v. Callahan*, 168 F.3d 72 (2d Cir. 1999):

> The opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence. See *Clark v. Commissioner of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998) (*citing* 20 C.F.R. § 404.1527(d)(2)); see also *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir.1993) (same). In analyzing a treating physician's report, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983); see also *Balsamo*, 142 F.3d at 80-81 (*citing McBrayer*); *Wagner v. Secretary of Health and Human Servs.*, 906 F.2d 856, 862 (2d Cir.1990) ("[A] circumstantial critique by [a] non-physician[ ], however thorough or responsible, must be overwhelmingly compelling" to justify a denial of benefits). In this case, however, the ALJ did exactly that.

*Rosa*, 168 F.3d at 78–79. Here, the Court determines that the ALJ's critique of Dr. Lasser's conclusions is not overwhelmingly compelling and, as such, does not support her determination that his opinion was deserving of little weight. As plaintiff points out in his memorandum of law, the ALJ did not cite to any contradictory medical opinion, and those medical opinions in the Record are not inconsistent with Dr. Lasser's RFC opinion. For example, the ALJ determined that Dr. Lasser's opinion about plaintiff's deterioration was incredible, since, "[i]f Dr. Lasser believed that the claimant had actually deteriorated after that time, he would have sent him for additional testing." (Record, at 24.) This is a clear example of the ALJ substituting her own medical "expertise" for that of the treating physician. Additionally, the RFC opinion of consultative examiner Samuel Balderman,

M.D., is not specific enough itself to support the ALJ's RFC determination. (Record, at 234 ("claimant has mild-to-moderate limitations in walking, climbing, and carrying due to his weakness of the right lower extremity.") Therefore, the Court finds that the ALJ misapplied the legal standard encompassed in the treating physician rule in evaluating Dr. Lasser's opinion, and that the case must be remanded. If, upon reconsideration, the ALJ should determine that Dr. Lasser's opinion is entitled to controlling weight, then based on the answer to the hypothetical question asked of the vocational witness, which incorporated Dr. Lasser's limitations, the Commissioner may not be able to meet his burden under step five of the sequential evaluation process. (Record, at 417-19).

Plaintiff also cites to the ALJ's determination of his RFC, claiming that the ALJ's finding was not made in accord with the applicable regulations. The Court agrees. In this case, the ALJ relied on plaintiff's statement to a consultative examiner, Dr. Balderman, as her sole evidence in support of her RFC determination. (Record, at 24.) Although the ALJ cited to the proper regulations, she does not appear to have applied them. The ALJ's decision does not contain any indication that the plaintiff was asked, nor did he tell the consultative examiner, whether he needed breaks, or how long he could hold his head in a flexed or static position, or whether the pain he experienced affected his ability to concentrate or whether he could lift and carry 10 pounds occasionally throughout a workday. (Record, at 232.) Relying solely on plaintiff's statements contained Dr. Balderman's report to the exclusion of all the other medical evidence, including opinions from a treating source constitutes error. SSR 96-8p, 1996 WL 374184, at *5 (SSA Jul. 2, 1996) ("The RFC assessment must be based on all of the relevant evidence in the case record . . . .").

> The Court further finds that the ALJ did not properly assess plaintiff's credibility.
>
> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion

> about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.

SSR 96-7p 1996 WL 374186 *3-4 (S.S.A. Jul. 2, 1996). Plaintiff's statements to Dr. Balderman were not further clarified during plaintiff's testimony, and do not provide substantial evidence to support the ALJ's RFC determination under the criteria prescribed by the Commissioner's Ruling. *See Holcomb v. Barnhart*, No. 05-CV-6435CJS, 2006 WL 2128586, at 7 (W.D.N.Y. May 26, 2006) ("the factual assertions made in Dr. Balderman's report were not further developed when plaintiff was testifying.").

Finally, plaintiff asserts that the ALJ did not properly assess his credibility. The Court concurs. The ALJ's decision does not reflect the proper application of the Commissioner's Regulation at 20 C.F.R. § 404.1529(c)(2). That regulation states, in pertinent part, as follows:

> (c) Evaluating the intensity and persistence of your symptoms, such as pain, and determining the extent to which your symptoms limit your capacity for work–
>
> (2) Consideration of objective medical evidence.… We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, *we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements*.

20 C.F.R. § 404.1529(c)(2) (56 FR 57941, Nov. 14, 1991, as amended at 62 FR 38451, July 18, 1997; 71 FR 10429, Mar. 1, 2006) (emphasis added). From her decision, it is apparent that the ALJ found plaintiff's testimony not credible based upon the fact that it was not supported by objective medical evidence. For example, plaintiff testified that when he wakes up and it's a "bad day," "I'm so sore and stiff that I have to crawl to the bathroom to take my medication. I can take a couple of pills and crawl back to bed because my medication makes me drowsy and makes me go to sleep." (Record, at 394.) He further testified that he had "bad days" on an average of eight to ten days a month in the winter, and 4 or so per month the rest of the year. (*Id.*) If the ALJ believed this testimony, then the

vocational expert's opinion, that plaintiff's absenteeism would preclude any work (Record, at 419), could clearly lead to a finding that he was disabled. Without an analysis of plaintiff's credibility, as required by the Commissioner's Regulation, the Court cannot find that the ALJ's decision is based on substantial evidence in the Record.

## CONCLUSION

For the reasons set forth above, the Court grants plaintiff's motion (#4) for judgment on the pleadings, and denies defendant's cross-motion (#6) for judgment on the pleadings. This action is remanded under the fourth sentence of 42 U.S.C. § 405(g) to the Commissioner to assess plaintiff's credibility consistent with 20 C.F.R. § 404.1529 and Social Security Ruling 96-7; reassess the treating physician's opinions concerning plaintiff's RFC; and reassess plaintiff's residual functional capacity

.
IT IS SO ORDERED.

Dated:   March 14, 2007
         Rochester, New York

      ENTER:

          /s/ Charles J. Siragusa
          CHARLES J. SIRAGUSA
          United States District Judge